1

2  WILDE & ASSOCIATES
   Gregory L. Wilde, Esq.
3  Nevada Bar No. 004417
   208 South Jones Boulevard
4  Las Vegas, Nevada 89107
   Telephone:  702 258-8200
5  bk@wildelaw.com
   Fax:  702 258-8787

6  MARK S. BOSCO, ESQ.
   Arizona Bar No. 010167
7  TIFFANY & BOSCO, P.A.
   2525 East Camelback Road, Suite 300
8  Phoenix, Arizona 85016
   Telephone: (602) 255-6000
9
   Wells Fargo Bank, N.A.
10 09-77882
11

Electronically Filed on _____

12              UNITED STATES BANKRUPTCY COURT

13                      DISTRICT OF NEVADA

14

15 In Re:                              BK-S-09-31385-mkn

16 Theodore Michael Faulkenburg        Date: 1/20/2010
                                       Time: 1:30 pm
17
                                       Chapter 7
18              Debtor.

19

20        **MOTION FOR RELIEF FROM AUTOMATIC STAY**

21        Wells Fargo Bank, N.A., Secured Creditor herein, ("Secured Creditor" or "Movant"

22 hereinafter), alleges as follows:

23        1.      That on or about November 11, 2009, the above named Debtor filed this instant Chapter

24 7 Petition in Bankruptcy with the Court.

25        2.      That on or about December 2, 2009 Secured Creditor received an assignment from

26 MERS as nominee for RMS & ASSOCIATES which grants Secured Creditor all beneficial interest

   under the Deed of Trust. The Assignment of Deed of Trust is attached as Exhibit "A".  Secured

Creditor alleges that MERS as nominee for RMS & ASSOCIATES is no longer in business and must obtain above referenced assignment through Mortgage Electronic Registration Systems, the beneficiary as indicated in the Deed of Trust. The Deed of Trust is attached as Exhibit "B".

3.    Secured Creditor is the current payee of a promissory note dated January 22, 2009 in the principal sum of $232,109.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of same date ("Trust Deed" herein) upon property generally described as 3055 Talbot Circle, Las Vegas, NV 89269, and legally described as follows:

LOT 37 IN BLOCK 4 OF FRANCISCO PARK NO. 11, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 8 OF PLATS, PAGE 72 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
A.P.N.: 162-11-712-037

("subject property" herein).

Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor.

4.    Movant is informed and believes and therefore alleges that the Debtor and the bankruptcy estate have no equity in the property. Pursuant to Debtor's Statement of Intentions the debtor intends on surrendering debtor's interest in the subject property. A true and correct copy of the Debtor's Statement of Intention is attached hereto as Exhibit "C".

5.    Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property. The fair market value of the property pursuant to Debtor's Schedule "A" is $64,250.00, less ten percent (10%) cost of marketing, less the first secured lien resulting in insufficient equity. Therefore, secured creditor is not adequately protected. A true and correct copy of the Debtor's Schedule "A" is attached hereto as Exhibit "D".

6.    Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

7.    Secured Creditor has incurred to date attorney's fees of approximately $750.00.

8.    Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

9.    Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "E" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

10.    Lenard E Schwartzer has been appointed by this Court the Chapter 7 Trustee in this instant Bankruptcy proceeding. By virtue of the position as Trustee of the estate of Debtor herein, Debtor holds title to the subject property in that capacity. To the extent the relief sought herein is granted, Respondent, Lenard E Schwartzer, Trustee, is bound any such judgment.

11.    This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

12.    Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning the subject property. As a result, Secured Creditor asks the Court to waive the requirement of notifying other lienholders as detailed in Local Rule 4001 (a)(1). Such lienholders will be notified of a foreclosure proceeding if and when one is initiated.

WHEREFORE, Secured Creditor prays judgment as follows:

(1)    For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)    That a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order granting relief from the automatic stay.

(3)    In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)    For attorneys' fees and costs of suit incurred herein.

(5)    For such other and further relief as this Court deems appropriate.

DATED this 14th day of December, 2009.

**WILDE & ASSOCIATES**

By:    /s/Gregory L. Wilde, Esq
       **GREGORY L. WILDE, ESQ.**
       Attorney for Secured Creditor
       208 South Jones Boulevard
       Las Vegas, Nevada 89107

WHEN RECORDED MAIL TO:

**TIFFANY & BOSCO, P.A.**
**Michael A. Bosco, Jr.**
**2525 East Camelback Road, Suite 300**
**Phoenix, AZ 85016**

## ASSIGNMENT OF DEED OF TRUST

Loan No. 708-0211810494                                                                          T & B No.: 09-77882
Parcel No.

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **Wells Fargo Bank,
N.A.**, all beneficial interest under that certain Deed of Trust dated **January 22, 2009** executed by
**THEODORE M. FAULKENBURG, AN UNMARRIED MAN AND CHRISTINE N. SILIPO, AN
UMARRIED WOMAN** Trustor, **Fidelity National Title Agency of Nevda, INC.** Trustee, **RMS &
ASSOCIATES**, as Beneficiary; and recorded on **01/30/09** as Recording No./Book-Page **20090130-0004941**
of Official Records of **Clark** County, NV and legally describing the trust property as:

LOT 37 IN BLOCK 4 OF FRANCISCO PARK NO. 11, AS SHOWN BY MAP THEREOF ON FILE IN
BOOK 8 OF PLATS, PAGE 72 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY,
NEVADA.
A.P.N.: 162-11-712-037

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust. Hereby made effective on:
Date : December 2, 2009

**MERS as nominee for RMS & ASSOCIATES**

By :
Its:      John Kennerty, Assistant Secretary

STATE OF SOUTH CAROLINA

)ss.

COUNTY OF YORK

On this 2nd day of December, 2009, before me, the undersigned, a Notary Public for said State, personally
appeared John Kennerty known to me to be the Assistant Secretary of the above corporation, and acknowledge
execution of the above instrument on behalf of the corporation.

My Commission Expires

OFFICIAL SEAL
Notary Public
State of South Carolina
GERALDINE JOHNSON
My Commission Expires Jan. 15, 2013

Geraldine Johnson
Notary Public



EXHIBIT A

20090130-0004941
Fee: $23.00    RPTT: $0.00
N/C Fee: $25.00
01/30/2009        16:24:22
T20090033863
Requestor:
 FIDELITY NATIONAL TITLE LAS
Debbie Conway          BGN
Clark County Recorder    Pgs: 10

Assessor's Parcel Number:  162-11-712-037

~~Recording Requested By~~:
RMS & ASSOCIATES

And When Recorded Return To:
RMS & ASSOCIATES
3585 E. FLAMINGO ROAD #103
LAS VEGAS, NEVADA 89121
Loan Number: 5000900014
Mail Tax Statements To:
RMS & ASSOCIATES, 3585 E.
FLAMINGO ROAD #103, LAS
VEGAS, NEVADA 89121

————————————— [Space Above This Line For Recording Data] —————————————

# DEED OF TRUST

FHA CASE NO.

332-4787951-703

MIN: 100137309010069721

THIS DEED OF TRUST ("Security Instrument") is made on  JANUARY 22, 2009
The grantor is THEODORE M. FAULKENBURG, AN UNMARRIED MAN AND
CHRISTINE N. SILIPO, AN UNMARRIED WOMAN

("Borrower").

The trustee is FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.
2850 HORIZON RIDGE PARKWAY SUITE 120, HENDERSON, NEVADA 89052     ("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-
MERS.
RMS & ASSOCIATES, A NEVADA CORPORATION

("Lender")

is organized and existing under the laws of  NEVADA
and has an address of  3585 E. FLAMINGO ROAD #103, LAS VEGAS, NEVADA
89121

DocMagic *eFormss*  800-649-1362
www.docmagic.com

EXHIBIT B

Assessor's Parcel Number:  162-11-712-037

~~Recording Requested By~~:
RMS & ASSOCIATES

And When Recorded Return To:
RMS & ASSOCIATES
3585 E. FLAMINGO ROAD #103
LAS VEGAS, NEVADA 89121
Loan Number: 5000900014
Mail Tax Statements To:
RMS & ASSOCIATES, 3585 E.
FLAMINGO ROAD #103, LAS
VEGAS, NEVADA 89121

———————————— [Space Above This Line For Recording Data] —— ————————

# DEED OF TRUST

| FHA CASE NO. |
| --- |
| 332-4787951-703 |

MIN: 100137309010069721

THIS DEED OF TRUST ("Security Instrument") is made on  JANUARY 22, 2009
The grantor is  THEODORE M. FAULKENBURG, AN UNMARRIED MAN AND
CHRISTINE N. SILIPO, AN UNMARRIED WOMAN

("Borrower").

The trustee is  FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.
2850 HORIZON RIDGE PARKWAY SUITE 120, HENDERSON, NEVADA 89052      ("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-
MERS.

RMS & ASSOCIATES, A NEVADA CORPORATION

("Lender")

is organized and existing under the laws of  NEVADA
and has an address of  3585 E. FLAMINGO ROAD #103, LAS VEGAS, NEVADA
89121

Borrower owes Lender the principal sum of TWO HUNDRED THIRTY-TWO THOUSAND ONE HUNDRED NINE AND 00/100              Dollars (U.S. $ 232,109.00      ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on FEBRUARY 1, 2039 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in CLARK                    County, Nevada:
LOT 37 IN BLOCK 4 OF FRANCISCO PARK NO. 11, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 8 OF PLATS, PAGE 72 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
A.P.N.: 162-11-712-037

which has the address of                3055 TALBOT CIRCLE
                                              [Street]

        LAS VEGAS              , Nevada      89169      ("Property Address"):
          [City]                             [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the

Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3.  Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4.  Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give

Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

(a)  **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)  **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)  **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)  **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS
from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to  60 DAYS               from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to

extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

FHA NEVADA DEED OF TRUST - MERS
NVDOTZ.FHA  11/01/08                     Page 6 of 9          DocMagic *eⒻⓞⓡⓜⓢ  800-649-1362
                                                              www.docmagic.com

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**21. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 500, as a maximum amount, depending on whether the assumption includes a release of liability.

FHA NEVADA DEED OF TRUST - MERS
NVDOTZ.FHA  11/01/08                    Page 7 of 9          *DocMagic eForms*  800-649-1362
                                                              www.docmagic.com

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider      ☐ Graduated Payment Rider      ☐ Growing Equity Rider

☐ Planned Unit Development Rider      ☐ Adjustable Rate Rider      ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider      ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
THEODORE M.                    -Borrower
FAULKENBURG

_____ (Seal)
CHRISTINE N. SILIBO            -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Witness:                      Witness:

_____       _____

_____ |Space Below This Line For Acknowledgment| _____

State of ___NEVADA___

County of ___CLARK___

This instrument was acknowledged before me on ___JANUARY 23, 2009___

by ___THEODORE M. FAULKENBURG AND CHRISTINE N. SILIPO___

SHIRLEY BAILEY
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 09-22-2011
Certificate No: 99-58649-1

Signature of notarial officer

NOTARY PUBLIC
Title

(Seal)

My commission expires: 9-22-11

FHA NEVADA DEED OF TRUST - MERS
NVDOTZ.FHA  11/01/08                Page 9 of 9

DocMagic *e*⊧⊧⊧⊧  800-649-1362
www.docmagic.com

## LEGAL DESCRIPTION

### EXHIBIT "A"

Assessor's Parcel No: 162-11-712-037

Lot 37 in Block 4 of Francisco Park No. 11, as shown by map thereof on file in Book 8 of Plats, Page 72 in the Office of the County Recorder of Clark County, Nevada.



MIN: 100137309010069721                    Loan Number: 5000900014

# NOTE

> FHA Case No.
> 332-4787951-703

JANUARY 22, 2009              LAS VEGAS                NEVADA
[Date]                        [City]                   [State]

3055 TALBOT CIRCLE, LAS VEGAS, NEVADA 89169
[Property Address]

## 1.  PARTIES
"**Borrower**" means each person signing at the end of this Note, and the person's successors and assigns.
"**Lender**" means   RMS & ASSOCIATES, A NEVADA CORPORATION
                                                and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
TWO HUNDRED THIRTY-TWO THOUSAND ONE HUNDRED NINE AND 00/100
                            Dollars (U.S. $ 232,109.00          ),
plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of
the loan proceeds by Lender, at the rate of  FIVE AND 000/1000              percent
(      5.000  %) per year until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the   1st  day of each month beginning
on  MARCH 1, 2009              . Any principal and interest remaining on the  1st     day of
FEBRUARY, 2039            , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at   3585 E. FLAMINGO ROAD #103, LAS VEGAS, NEVADA
89121
                                                    , or at such other place
as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,246.01          .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 05/01/08                         Page 1 of 3          DocMagic *eFerms* 800-649-1362
                                                               www.docmagic.com

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5.  BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.  BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of    FOUR AND 000/1000                          percent (      4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

---

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE  05/01/08                                    Page 2 of 3                    DocMagic *eForms* 800-649-1362
                                                                                     www.docmagic.com

this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
THEODORE M. FAULKENBURG -Borrower

_____ (Seal)
CHRISTINE N. SILIPO          -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

**PAY TO THE ORDER OF**

Wells Fargo Bank NA

**WITHOUT RECOURSE**

BY: _____

RMS & Associates    A Nevada Corporation

FOR: _____

BY: TAMARA HAMBRIGHT, SR. VICE PRESIDENT
SOUTHWEST SECURITIES, FSB
ATTORNEY-IN-FACT (CUSTODIAN AND BAILEE)

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A.

By _____
Lori K. Venegoma
Vice President Loan Documentation

*[Sign Original Only]*

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE  05/01/08                    Page 3 of 3              DocMagic *eFurms* 800-649-1362
                                                               www.docmagic.com

B8 (Form 8) (12/08)

# United States Bankruptcy Court
## District of Nevada

In re   **Theodore Michael Faulkenburg**

Debtor(s)

Case No. _____

Chapter   **7**   _____

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** - Debts secured by property of the estate. (Part A must be fully completed for **EACH** debt which is secured by property of the estate.  Attach additional pages if necessary.)

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**HSBC** | **Describe Property Securing Debt:**<br>**2008 Yamaha 250 Raptor** |

Property will be (check one):
  ■ Surrendered                    ☐ Retained

If retaining the property, I intend to (check at least one):
  ☐ Redeem the property
  ☐ Reaffirm the debt
  ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
  ☐ Claimed as Exempt                    ■ Not claimed as exempt

| Property No. 2 | |
|---|---|
| **Creditor's Name:**<br>**Hsbc/suzki** | **Describe Property Securing Debt:**<br>**2007 Suzuki LTR 450** |

Property will be (check one):
  ■ Surrendered                    ☐ Retained

If retaining the property, I intend to (check at least one):
  ☐ Redeem the property
  ☐ Reaffirm the debt
  ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
  ☐ Claimed as Exempt                    ■ Not claimed as exempt


EXHIBIT C

B8 (Form 8) (12/08)                                                                                                    Page 2

| Property No. 3 | |
|---|---|
| **Creditor's Name:**<br>Wells Fargo Hm Mortgag | **Describe Property Securing Debt:**<br>3055 Talbot Circle, Las Vegas NV 89169 |

Property will be (check one):
   ■ Surrendered               □ Retained

If retaining the property, I intend to (check at least one):
   □ Redeem the property
   □ Reaffirm the debt
   □ Other.  Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
   □ Claimed as Exempt                 ■ Not claimed as exempt

**PART B** - Personal property subject to unexpired leases. (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:**<br>-NONE- | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>□ YES       □ NO |

I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.

Date  **November 11, 2009**          Signature  **/s/ Theodore Michael Faulkenburg**
                                         **Theodore Michael Faulkenburg**
                                       Debtor

B6A (Official Form 6A) (12/07)

In re     **Theodore Michael Faulkenburg**                                                            Case No. _____

                                                        Debtor

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 3055 Talbot Circle, Las Vegas NV 89169 | | - | 64,250.00 | 0.00 |

|  | Sub-Total > | **64,250.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **64,250.00** | |

__0__   continuation sheets attached to the Schedule of Real Property

EXHIBIT ⅃        (Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                         Best Case Bankruptcy

Theodore Faulkenburg
DEBTORNV362#

Chapter 7
Case No.: 09-31385-mkn

Wells Fargo Bank, N.A.
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 3055 Talbot Circle , Las Vegas NV 89269

NOTICE SERVED ON: Debtor(s) _____x_____; Debtor (s) Counsel _____x_____; Trustee _____x_____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st Wells Fargo Bank, N.A. (PB$230,958.31) | 1st _____ |
| Total Encumbrances: $230,958.31 | 2nd _____ |
| APPRAISAL or OPINION as to VALUE: "Per attached Schedule "A" $64,250.00 | Total Encumbrances: $_____ APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $232,109.00 Interest Rate: 5.0 Duration: 30 Year Payment Per Month: $ 1,472.21 Date of Default: July 1, 2009 SPECIAL CIRCUMSTANCES: **I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.** SUBMITTED BY: SIGNATURE: | SPECIAL CIRCUMSTANCES: SUBMITTED BY: _____ SIGNATURE: _____ |

EXHIBIT E